

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-2-2007

# USA v. Manzella

Precedential or Non-Precedential: Precedential

Docket No. 06-3434

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation
"USA v. Manzella" (2007). *2007 Decisions*. Paper 1553.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1553

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.  06-3434

UNITED STATES OF AMERICA

v.

VALERIE MANZELLA,

Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 05-cr-00289)
District Judge: Honorable Arthur J. Schwab

Argued December 5, 2006

Before: RENDELL and AMBRO, Circuit Judges
BAYLSON,[*] District Judge

[*]Honorable Michael M. Baylson, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

(Opinion filed:   February 2, 2007)

Lisa B. Freeland
    Federal Public Defender
Kimberly R. Brunson, Esquire (Argued)
Office of Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA   15222

        Counsel for Appellant

Mary Beth Buchanan
    United States Attorney
Robert L. Eberhardt, Esquire (Argued)
Kelly R. Labby, Esquire
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA   15219

        Counsel for Appellee

———————————

OPINION OF THE COURT

———————————

AMBRO, <u>Circuit Judge</u>

Section 3582(a) of Title 18 requires sentencing judges to

2

"recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." We conclude that the District Court, despite the best of intentions, violated this statutory command by sentencing Valerie Manzella to 30 months of imprisonment solely because a term of that length was believed necessary to make her eligible for a 500-hour drug treatment program offered by the Bureau of Prisons.

## I. Factual Background

Manzella pled guilty to one count of "Uttering a Counterfeit Security of an Organization Involved in Interstate Commerce," in violation of 18 U.S.C. § 513(a). The Government admits that Manzella was a "small participant in a large[-]scale counterfeit check cashing scheme." The organizer of the scheme, Herbert Lamont Ballard, had recruited Tammy Racz for assistance. Racz, in turn, sought people who would provide their own personal information with which to generate counterfeit checks, all in return for a portion of the fraudulent proceeds. Manzella was one of those recruits.

Manzella is a drug addict, but it was not always so. Around the age of 30, she and her partner wanted to have a child, but had difficulty conceiving. When Manzella finally became pregnant, she had a miscarriage, causing her to become depressed. It was then that she began abusing drugs. Soon the relationship with her partner ended and Manzella became involved with a drug addict who prostituted her for cash. In the

decade since her miscarriage, Manzella has tried several times to treat her addiction, but nothing has worked. Like others similarly involved, Manzella was thus vulnerable to Racz's invitation to join Ballard's fraud conspiracy.

On her arrest for attempting to cash a counterfeit check in the amount of $484.06, Manzella immediately cooperated with the authorities. It has been suggested that the threat of Manzella testifying against Ballard played a significant role in causing him to plead guilty.

Aside from this cooperation, however, it is fair to say that the period between Manzella's arrest and sentencing was a tragic drama. Conditions of Manzella's pre-trial release included refraining from the use and possession of controlled substances and reporting regularly to Pre-Trial Services for drug testing. In addition, she was required to attend outpatient drug therapy at a facility called "Zoar NewDay" in Pittsburgh. Several months after being released on bond, Manzella failed to report to Pre-Trial Services and to Zoar NewDay, causing the District Court to issue a warrant for her arrest. Once Manzella was apprehended, the District Court held a hearing concerning the violation of her pre-trial release, resulting in the imposition of an additional condition—home confinement monitored by electronic device. Shortly after the hearing, Manzella entered her guilty plea. After the plea colloquy, the Court advised Manzella that "it will be foolish to come to your sentencing having violated" the conditions of pre-trial release.

4

Nevertheless, in the several months following her plea, Manzella repeatedly left her residence for unauthorized purposes and tested positive for cocaine. Shortly before her sentencing, Manzella again was arrested, this time after being found passed out with a crack pipe in her purse.

Manzella was sentenced in June 2006. The undisputed advisory Sentencing Guidelines range was 2–8 months of imprisonment.[1] In her pre-sentencing memorandum, Manzella's attorney argued for a non-jail sentence. At the sentencing hearing, however, she instead argued (presumably because of the pre-trial release violations) that Manzella should be sentenced to a one-month prison term only or, at most, one month in prison followed by a term of supervised release. Manzella's mother also addressed the Court regarding her daughter's history of drug addiction. The Government did not make any specific recommendations as to the proper sentence but did argue that "the only thing that's going to get [Manzella] clean, to change her lifestyle, is a lengthy period of incarceration. . . . She's never been made to face the consequences of her actions."

---

[1]This range falls into "Zone B" of the Sentencing Table. *See* U.S.S.G. Ch. 5, Pt. A. Under the mandatory Guidelines system, a Guidelines range falling in Zone B authorized a court, instead of imprisonment, to sentence the defendant to a term of probation, as long as it also included intermittent confinement, community confinement, or home detention. *See Id.* § 5B1.1(a)(2).

After counsel had finished making their arguments, the Judge imposed a sentence of 36 months in prison and recommended that Manzella be placed in the Bureau of Prisons's 500-hour drug treatment program while incarcerated. The Judge explained:

> The reason for the sentence is as follows: The Court finds the sentence imposed to be sufficient, but not greater than necessary for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; to afford adequate deterrence; to protect the public against commission of further crimes by this Defendant; and provide the Defendant with needed and effective educational or vocational training, medical care, or other corrective treatment.

> It is obvious that the short-term incarcerations and the drug treatment programs to date have not been sufficient to help [the] Defendant work through her issues. The drug treatment program of 500 hours is the best program that is available in the federal correctional system and requires a minimum of 36 months in order to participate in that program.

> I also find that her conduct is different than

the other people that I have given probation to or minimum sentences because of her conduct and her continued violation of her obligations to this court. And I have great concern that a sentence of one month and putting her back out on the street will not help her solve her issues and, quite frankly, could lead to her great harm and possibly to her death.

The Court, additionally, has considered all the other factors set forth in Title 18 [of the] United States Code, Section 3553(a), including the nature and circumstances of the offense, the Defendant's history and characteristics, the kinds of sentences available for this offense, the sentencing guidelines range under the advisory guidelines adopted by the United States Sentencing Commission for the category of offense and [the] Defendant's criminal history, any applicable policy statements adopted by the Sentencing Commission, the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victim of the offense.

Manzella's attorney objected almost immediately, arguing that there were several options short of prison that could provide

Manzella with rehabilitative services. Specifically, she pointed out that the longest treatment program Manzella had ever attended had lasted only 30 days and that a longer, more intensive program—such as a halfway house—might prove more effective.

When the Judge did not respond to these arguments, Manzella's attorney then recalled that "there was somebody else in my office who had a case where I believe Your Honor had sentenced the Defendant to the 500-hour drug treatment program through [the Bureau of Prisons], but they thought a 24-month sentence would be sufficient to be able to get her into it, given that it was a female, et cetera." Though still contending that no prison sentence was warranted, Manzella's attorney requested in the alternative that the Judge impose a 24-month sentence instead.

This argument piqued the Judge's interest.

I had previously been informed that for a woman, that 24 months was adequate to participate fully in the 500-hour program. I was either misinformed or that information has been updated and so my understanding is that it is -- the minimum is 36 months.

If counsel wishes, I would be pleased to hold the implementation of this sentencing until

8

early next week so counsel -- the counsel for [the] Defendant and the Government can meet with the Probation Office and verify that information. But I do remember the sentence from two weeks ago, I did inquire of the probation officer about the 24 months and was informed that it's 36 months. I did that intentionally today.

Rather than delaying the sentence into the next week, everyone agreed to adjourn briefly so that the probation officer could inquire from the Bureau of Prisons as to the specific term of imprisonment needed in order for Manzella to be eligible for the 500-hour treatment program. When the hearing resumed, the Judge reported:

It is my understanding from the Probation Office that although the Bureau of Prisons wished to have 36 months to conduct the program in light of scheduling issues, they believe that they can do it at 30 months. So I will amend my sentence to 30 months, down from 36 months.

Even this reduced sentence is almost four times longer than the top of the advisory Guidelines range.

Manzella filed an expedited appeal of her sentence, claiming that (1) it violates 18 U.S.C. § 3582(a); (2) it is unreasonable in light of 18 U.S.C. § 3553(a) and *United States*

9

*v. Booker*, 543 U.S. 220 (2005); and (3) it violates the *Ex Post Facto* Clause of the Constitution, *see* U.S. CONST. art. I, § 9, cl. 3. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

## II. Discussion

Though the Sentencing Guidelines are now advisory, sentencing courts must still follow statutory mandates. We review criminal sentences for a "violation of the law," 18 U.S.C. § 3742(a)(1), which includes (i) matters of statutory interpretation over which we have plenary review, *United State v. Howerter*, 248 F.3d 198, 200 (3d Cir. 2001), as well as (ii) questions about reasonableness, *Booker*, 543 U.S. at 258–65; *United States v. Cooper*, 437 F.3d 324, 326–28 (3d Cir. 2006).

### A. Reconciling Sections 3582(a) and 3553(a)(2)(D)

Manzella claims that the District Court violated the law when it imposed a 30-month term of incarceration for the sole purpose of making her eligible for the Bureau of Prisons's 500-hour drug treatment program. Specifically, she points to 18 U.S.C. § 3582(a), which provides:

> **Factors to be considered in imposing a term of imprisonment**—The court, in determining whether to impose a term of imprisonment, and,

if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation*.

(emphasis added).

On the other hand, the Government argues that the District Court's desire to provide Manzella with rehabilitative services is not only allowed, but affirmatively encouraged. Specifically, 18 U.S.C. § 3553(a) provides in part:

> **Factors to be considered in imposing a sentence**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> . . .
>
> (2) the need for the sentence imposed—
>
> . . .

11

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

At a glance, §§ 3553(a)(2)(D) and 3582(a) appear to be in conflict—the former requiring a sentencing court to consider a defendant's need for rehabilitation and the latter prohibiting it. On closer reading, however, the supposed conflict is illusory.

We begin, of course, with the statutory text. "In matters of statutory interpretation, the 'plain meaning' of statutory language is often illuminated by considering not only 'the particular statutory language' at issue, but also the structure of the section in which the key language is found, 'the design of the statute as a whole and its object . . . .'" *United States v. Tupone*, 442 F.3d 145, 151 (3d Cir. 2006) (quoting *United States v. Schneider*, 14 F.3d 876, 879 (3d Cir. 1994)).

Sections 3553(a)(2)(D) and 3582(a) were enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, Tit. II, ch. II, §§ 3553, 3582, 98 Stat. 1837 (1984). It is widely recognized that this legislation rejected rehabilitation as the primary goal of our criminal justice system, though it did not abandon it entirely. *See Mistretta v. United States*, 488 U.S. 361, 366–67 (1989); Ilene H. Nagel, *Structuring Sentencing Discretion: The New Federal Sentencing Guidelines*, 80 J.

12

CRIM. L. & CRIMINOLOGY 883, 899–906 (1990); Harvey M. Silets & Susan W. Brenner, *The Demise of Rehabilitation*, 13 AM. J. CRIM. L. 329, 356–62 (1986); Michael Vitiello, *Reconsidering Rehabilitation*, 65 TUL. L. REV. 1011, 1027–29 (1991).

The Second Circuit Court of Appeals, in *United States v. Maier*, 975 F.2d 944 (2d Cir. 1992), was among the first to explain how this refocus functioned in practice. It refuted the claim—advanced by the Ninth Circuit Court of Appeals in *United States v. Martin*, 938 F.2d 162 (9th Cir. 1991)—that "'rehabilitation is no longer a direct goal of sentencing.'" *Maier*, 975 F.2d at 946 (emphasis omitted) (quoting *Martin*, 938 F.2d at 163). For that proposition, the Ninth Circuit had cited 28 U.S.C. § 994(k), which is a directive to the Sentencing Commission to ensure that "the [G]uidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant." The Second Circuit explained, however, that rather than prohibiting rehabilitation as a goal of *sentencing*, § 994(k) "stands for the significantly different proposition that rehabilitation is not an appropriate goal for *imprisonment*." *See Maier*, 975 F.2d at 946 (emphasis in original). This was not to say that § 3553(a)(2)(D) has no effect, for "Congress expressed no hostility to rehabilitation as an objective of *sentencing*." *Id.* at 946–47 (emphasis in original) (citing 18 U.S.C.

13

§ 3553(a)(2)(D)).[2]

The terms "sentence" and "imprisonment" in the Sentencing Reform Act are different—and are the key to understanding how §§ 3582(a) and 3553(a)(2)(D) operate in harmony. "Sentence" has broad meaning. It includes many types of possible punishment, only one of which is "imprisonment." *See* 18 U.S.C. § 3551(b) (authorizing sentences of fines, probation, restitution, forfeiture, and victim notice, in addition to imprisonment); *id.* § 3583 (providing for supervised release after a term of imprisonment). So understood, the "conflict" between §§ 3582(a) and

---

[2]Like § 3582(a), § 994(k) was enacted as part of the Sentencing Reform Act. *See* Pub. L. No. 98-473, Tit. II, ch. II, § 994(k). Unlike § 3582(a), though, § 994(k) is a directive to the U.S. Sentencing Commission, not to sentencing courts. *United States v. Hawk Wing*, 433 F.3d 622, 629 n.5 (8th Cir. 2006); *United States v. Hardy*, 101 F.3d 1210, 1212–13 (7th Cir. 1996); *United States v. Duran*, 37 F.3d 557, 561 (9th Cir. 1994). Still, given the sections' common origin and remarkably similar wording, we find analyses of § 994(k) to be instructive to our understanding of § 3582(a). *See United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) (instructing that statutory provisions, to the extent possible, be interpreted harmoniously). Other courts have done so as well. *See, e.g.*, *Hawk Wing*, 433 F.3d at 629; *United States v. Jackson*, 70 F.3d 874, 879–80 (6th Cir. 1995); *United States v. Anderson*, 15 F.3d 278, 280–81 (2d Cir. 1994).

14

3553(a)(2)(D) wanes away: courts must consider a defendant's need for rehabilitation when devising an appropriate *sentence* (pursuant to § 3553(a)(2)(D)), but may not carry out that goal by *imprisonment* (pursuant to § 3582(a)).

The reason for establishing such a policy was explained by the Second Circuit in *Maier*: "Congress wanted to be sure that no defendant was locked up in order to put him in a place where it was *hoped* that rehabilitation would occur." 975 F.2d at 946 (emphasis added). Instead, "[i]ncarceration would have to be justified by such traditional penological purposes as incapacitation, general deterrence, specific deterrence, and retribution." *Id.* This rationale gains credence when we realize that sentencing judges have no authority to order the Bureau of Prisons to place a defendant in any given rehabilitative program that might be offered, though they may offer recommendations. *United States v. Melendez*, 279 F.3d 16, 18 (1st Cir. 2002); *Thye v. United States*, 109 F.3d 127, 130 (2d Cir. 1997). Allowing a judge to issue a specific term of imprisonment based on the uncertain placement of a defendant in a rehabilitative programs is a practice Congress was unwilling to endorse.

The Eleventh Circuit Court of Appeals, in *United States v. Harris*, 990 F.2d 594 (11th Cir. 1993), addressed this issue in a fact setting nearly identical to ours. There, the court reversed a district court's decision to impose consecutive sentences on two counts of conviction based on the district court's "desire that the defendant have enough time . . . to undergo drug

15

treatment in a federal institution." 990 F.2d at 595. It reasoned that "[r]egardless of the laudable motive of the district court and its sentencing determination that perhaps would give this defendant the best chance for rehabilitation, . . . it is not within the district court's discretion." *Id.* at 596 (citing 28 U.S.C. § 994(k); *United States v. Mogel*, 956 F.2d 1555, 1563 (11th Cir. 1992) ("Rehabilitative considerations have been declared irrelevant for purposes of deciding whether . . . to impose a prison sentence and, if so, what prison sentence to impose.")). The *Harris* Court went on to note—correctly—that "this prohibition relates only to the imprisonment part of a sentence and not to any other terms of a sentence. In fact, the precise factors that are not to be considered in imposing *imprisonment* are set forth by statute as factors to be considered in imposing *sentence*." 990 F.2d at 596 (emphasis added) (citing 18 U.S.C. § 3553(a)(2)(D)). "For instance," the Court added, "rehabilitation-oriented conditions are appropriate on supervised release." *Id.* (citing 18 U.S.C. § 3583(d)).

These holdings from the Second and Eleventh Circuits are consistent with congressional intent in passing the Sentencing Reform Act. *See Reese Bros., Inc. v. United States*, 447 F.3d 229, 235 (3d Cir. 2006) ("Our role in interpreting a statute is to give effect to Congress'[s] intent."). The Senate Report accompanying the Act[3] noted generally that, "[i]n the

---

[3]*See Mistretta*, 488 U.S. at 366 ("Helpful in our consideration and analysis of the statute is the Senate Report on the 1984

16

federal system today, criminal sentencing is based largely on the outmoded rehabilitation model. . . . [A]lmost everyone involved in the criminal justice system now doubts that rehabilitation can be induced reliably in a prison setting." S. REP. NO. 98-225 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3221. Later, in its specific discussion of § 3582(a), the Report explained further:

> Subsection (a) specifies, in light of current knowledge, that the judge should recognize, in determining whether to impose a term of imprisonment, "that imprisonment is not an appropriate means of promoting correction and rehabilitation." This caution concerning the use of rehabilitation as a factor . . . is to discourage the employment of a term of imprisonment on the sole ground that a prison has a program that might be of benefit to the prisoner. This does not mean, of course, that if a defendant is to be sentenced to imprisonment for other purposes, the availability of rehabilitative programs should not be an appropriate consideration, for example, in recommending a particular facility.

*Id.* at 3302. In addition, the Report noted that probation and supervised release were appropriate means to meet the

---

legislation . . . .").

17

rehabilitative goals of § 3553(a)(2)(D). *See id.* at 3274 ("[W]hen the purpose of sentencing is to provide . . . correctional treatment required for rehabilitation, given the current state of knowledge, probation is generally considered to be preferable to imprisonment."); *id.* at 3307 (noting that a "primary goal" of supervised release is "to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release").

Rather than supporting the plain reading of the statute and congressional intent as set out above, the Government argues that § 3582(a) only prohibits a sentencing judge from considering § 3553(a)(2)(D)'s rehabilitative goals when selecting imprisonment as a component of the sentence *in the first place*, but does not bar that consideration in determining the *length* of that imprisonment. It is unclear what legal basis this argument has, yet the Ninth Circuit Court of Appeals has adopted it and suggested a textual rationale. In *United States v. Duran* that Court wrote that

> [i]f Congress had intended to prohibit sentencing judges from considering correction and rehabilitation in setting the length of the sentence, it could have enacted a statute that admonished judges to recognize "that imprisonment *or the length of imprisonment* is not an appropriate means of promoting correction and

18

rehabilitation."  It did not enact such a statute in
18 U.S.C. § 3582.

37 F.3d 557, 561 (9th Cir. 1994) (emphasis in original).

The problem with this observation is that the plain language of § 3582(a) in fact *does* extend its prohibition to a court's determination of "the length of the sentence." *Id.*; *see* 18 U.S.C. § 3582(a) ("The court, in determining whether to impose a term of imprisonment, *and, if a term of imprisonment is to be imposed, in determining the length of the term*, shall consider the factors set forth in section 3553(a) . . . , recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." (emphasis added)).  The possibility that a clearly worded statute might be even more clearly worded does not negate the fact that it is already clear.  Only the Eighth Circuit, in *United States v. Hawk Wing*, 433 F.3d 622 (8th Cir. 2006), has agreed with the Ninth Circuit on this issue.  *Hawk Wing*, however, offers no additional analysis beyond that in *Duran*, *see id.* at 629–30, and we decline to adopt the latter's reading of § 3582(a).[4]

---

[4]The Government cites for additional support *United States v. Jackson* from the Sixth Circuit Court of Appeals.  70 F.3d 874 (6th Cir. 1995).  The issue in *Jackson* was whether it was proper for a district court to seek rehabilitative goals in revoking supervised release.  *See id.* at 879.  However, this is an issue entirely different from determining what an initial sentence should be, as the revocation of supervised release is governed by

19

18 U.S.C. §§ 3583(e) and (g), which mandate consideration of § 3553(a), but not of § 3582(a). *See, e.g.*, *United States v. Tsosie*, 376 F.3d 1210, 1214–17 (10th Cir. 2004); *United States v. Brown*, 224 F.3d 1237, 1239–42 (11th Cir. 2000); *Jackson*, 70 F.3d at 880–81; *Anderson*, 15 F.3d at 280–83. Anything in *Jackson* regarding the role of rehabilitation in determining a defendant's initial sentence, therefore, is *dicta*. The same infirmity also applies to the Government's citation to *United States v. Giddings* from the Fifth Circuit Court of Appeals. 37 F.3d 1091, 1094–96 (5th Cir. 1994) ("We need not, and do not[,] decide whether a district court may properly consider a defendant's rehabilitative needs in deciding whether, as an initial matter, imprisonment is warranted.").

The Government also cites *United States v. Lara-Velasquez*, 919 F.2d 946 (5th Cir. 1990). The district court there refused to consider the defendant's rehabilitative potential in determining where, within the then-mandatory Guidelines range, to sentence him. The Fifth Circuit reversed, stating that a district court *may* do so. *Id.* at 956–57. Though this position is at odds with our reading of § 3582(a), *Lara-Velasquez* did not consider that section's relevance to its decision. The closest it came was in a footnote, which noted the truism that nothing in § 3582(a) "preclude[d] the district court's consideration of the defendant's rehabilitative potential as a mitigating factor at sentencing." *Id.* at 956 n.13. We certainly agree with that statement, but do not find it instructive on the precise issue presented in our case.

Manzella, on the other hand, argues that the Tenth Circuit Court of Appeals has joined the Second and Eleventh Circuits, citing *Tsosie*, which noted in a *dictum* that "[a]lthough [it] has

20

That section restricts a sentencing court's discretion in determining the length of a defendant's term of imprisonment, just as it does for the initial selection of imprisonment, when "promoting correction and rehabilitation."

We find the reasoning of the Second and Eleventh Circuits consistent with the plain language as well as the intent of the Sentencing Reform Act. It is the policy of the United States Congress, clearly expressed in law, that defendants not be sent to prison or held there for a specific length of time for the sole purpose of rehabilitation. Instead, that legitimate goal of sentencing is to be accomplished through other authorized forms of punishment.[5]

---

not yet had reason to comment on the specific import of [§ 3582(a)], the other circuits have recognized its clear mandate—when imposing an original sentence to a term of imprisonment, it is inappropriate for the district court to consider rehabilitation of the defendant as the sole purpose for imprisonment." 376 F.3d at 1214. This statement, however, offers no support for the argument that § 3582(a)'s prohibition extends to determining the length of imprisonment. It merely recites the undisputed proposition that rehabilitation cannot be a court's sole reason for imposing a term of imprisonment in the first place.

[5]In addition to violating statutory commands, we also note potential due process concerns in sentencing a defendant to a term of imprisonment simply because she is addicted to a controlled substance. *McMillan v. Pennsylvania*, 477 U.S. 79,

In this case, the circumstances of the sentencing hearing clearly indicate that the District Court sentenced Manzella to a prison term of 30 months for rehabilitative purposes (*i.e.*, so that she would be eligible for the Bureau of Prisons's 500-hour drug treatment program). At the outset, the Court expressly stated what it hoped to accomplish with Manzella's sentence:

> It is obvious that the short-term incarcerations and the drug treatment programs to date have not been sufficient to help [Manzella] work through her issues. The drug treatment program of 500 hours is the best program that is available in the federal correctional system and requires a minimum of 36 months in order to participate in that program.

Later, after the Court sentenced Manzella to a 36-month term and Manzella's attorney suggested that a lesser term might be sufficient to accomplish its specific rehabilitative aim, the Court recessed to investigate the question. Upon determining the answer, it then amended Manzella's term to 30 months. There can be no conclusion but that the Court set the length of

87–90 (1986); *United States v. Mobely*, 956 F.2d 450, 459 (3d Cir. 1992). Because the parties have not raised or briefed this issue, and because we avoid deciding constitutional questions if possible, we do not address it. *See Hagans v. Lavine*, 415 U.S. 528, 547 (1974) ("[A] federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available.").

22

Manzella's prison term solely for rehabilitative reasons. Despite its good intentions, this was error.[6]

B. Reasonableness

Additionally, we have said that "[m]erely reciting the § 3553(a) factors, saying that counsel's arguments have been considered, and then declaring a sentence, are insufficient to withstand our reasonableness review." *United States v. Jackson*, 467 F.3d 834, 842 (3d Cir. 2006); *see also Cooper*, 437 F.3d at 329 ("[A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises a ground of recognized legal merit (provided it has a factual basis) and the court fails to address it." (internal quotation marks omitted)). "Instead, the record must show a true, considered exercise of discretion on the part of a district court, including a recognition of, and response to, the parties' non-frivolous arguments." *Id.* at 841. Moreover, the more that a sentence varies from the advisory Guidelines range, the more compelling the supporting reasons must be. *See United States*

---

[6]At oral argument, defense counsel reported that the Bureau of Prisons did place Manzella in the 500-hour drug treatment program. She is scheduled to complete the prison portion of the program in July 2007—well before the end of her 30-month jail term. This situation, assuming it is true, offers a classic example of why Congress instructed that the length of a defendant's prison term not be determined based on the rehabilitative goals of sentencing.

23

*v. King*, 454 F.3d 187, 195 (3d Cir. 2006).[7]

The District Court's list of reasons for imposing Manzella's sentence primarily constituted a rote recitation of the § 3553(a) factors. *Jackson*, 467 F.3d at 842; *Cooper*, 437 F.3d at 329. Of the two substantive reasons given, one was statutorily prohibited, as explained above. The other (Manzella's pre-trial release violations), while adequate to justify some term of incarceration, cannot alone justify in this case a sentence nearly four times the advisory Guidelines range. *King*, 454 F.3d at 195. Finally, the record does not reflect why the Court disagreed with defense counsel's argument that an alternative sentence would have accomplished the Court's rehabilitative goals. *Jackson*, 467 F.3d at 841; *Cooper*, 437 F.3d at 329. We require more than this to facilitate meaningful reasonableness review.

\* \* \* \* \*

We hold that 18 U.S.C. § 3582(a) prohibits a sentencing court from effecting the rehabilitative goals of 18 U.S.C. § 3553(a)(2)(D) either in sentencing a defendant to a term of imprisonment or, if a term of imprisonment is otherwise to be imposed, in determining the length of that term. Other options

---

[7]*But see United States v. Claiborne*, 439 F.3d 479 (8th Cir. 2006), *cert. granted* 75 U.S.L.W. 3243 (U.S. Nov. 3, 2006) (No. 06-5618) (considering the propriety of such a rule).

must be employed to foster a defendant's rehabilitation.[8] Because the District Court relied on a statutorily prohibited justification in setting the length of Manzella's sentence, and because the record does not reflect an adequate consideration of the § 3553(a) factors (making it "unreasonable"), Manzella's sentence was "imposed in violation of the law." 18 U.S.C. § 3742(a). We vacate that sentence and remand this case for re-sentencing.[9]

---

[8]For example, on remand the District Court may find it appropriate to impose a sentence that includes prison along with community confinement or home detention, which could be conditioned on attendance at a drug rehabilitation program.

[9]We do not reach the argument that Manzella's sentence violates the *Ex Post Facto* Clause of the Constitution.